UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20336-CMA

UNITED STATES OF AMERICA,

v.

DELANEY EQUITY GROUP LLC,

Defendant.
_____/

## PLEA AGREEMENT

The United States of America, by and through the undersigned Assistant United States Attorney, and Delaney Equity Group LLC (hereinafter "Defendant") enter into the following agreement:

1. The Defendant understands that it has the right to have the evidence and charges against it presented to a federal grand jury for determination of whether or not there is probable cause to believe it committed the offenses with which it is to be charged. Understanding this right, and after full and complete consultation with his counsel, the Defendant agrees to waive in open court its right to prosecution by indictment and agrees that the United States may proceed by way of an Information to be filed pursuant to Rule 7 of the Federal Rules of Criminal Procedure.

2. The Defendant agrees to plead guilty to one count of conspiracy to sell unregistered securities, in violation of Title 15, United States Code, Sections 77e(a)(1), 77e(a)(2) and 77x, and Title 17, Code of Federal Regulations, Section 230.144; all in violation of Title 18, United States Code, Section 371. In exchange for Defendant's agreement to plead guilty, and for fulfilling all of its other obligations set forth in the Plea Agreement ("Agreement"), and subject to the

limitations and provisions set forth in the Agreement, the Attorney for the United States, acting under authority conferred by Title 28, United States Code, Section 515 (hereinafter "Office"), agrees not to prosecute Defendant for any other offenses arising out of the conduct described in Paragraph 15 below. This Agreement includes only the conduct set forth in Paragraph 15 below, and excludes crimes of violence and any tax offense. This Agreement is also limited to this Office, and as such, does not and cannot bind any other federal, state, regulatory, or local prosecuting authority. Defendant further agrees to waive and not assert any statute of limitations claim pertaining to the count to be charged in the Information. Defendant further agrees to toll any statute of limitations that may apply to the prosecution of any of the conduct referenced in paragraph 15 below, from the date of execution of this Agreement, for a period of two-years.

3. Defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The Defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the U.S. Probation Office, which investigation will commence after the guilty plea has been entered. The Defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The Defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence: the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the Defendant understands and

acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 2, and that the Defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The Defendant understands and acknowledges that the Court may impose a statutory maximum term of probation of five years for the count to be charged in the Information. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $500,000 or double the gross loss or gain, whichever is greater, and must order restitution.

5. The Defendant agrees that it will make restitution in an amount to be determined by the Court. The Defendant understands and agrees that the government and any victim may provide evidence to the Court for the purpose of a determination as to restitution. The Defendant understands and agrees that the term "victim" means a person or entity directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of a scheme, pattern, or conspiracy, any person directly harmed by the Defendant's criminal conduct in the course of the scheme, pattern, or conspiracy, as set forth in Title 18, United States Code, Section 3663A.

6. The Defendant understands and agrees that forfeiture shall be pronounced, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Federal Rule of Criminal Procedure 32.2, as part of Defendant's sentence with respect to the sentence imposed as to Count 1 of the Information. The Defendant agrees to forfeit to the United States voluntarily all fees and commissions that it received in relation to brokerage services for Steven Sanders, Daniel McKelvey, and Alvin S. Mirman, and any fees or commissions related to any activity related to mBeach Software Inc.; MIB Digital, Inc.; Teaching Time, Inc.; BCS Solutions, Inc.; Hidden Ladder, Inc.; Benefit Solutions Outsourcing Corp.; mLight Tech, Inc.; Big Clix Corp.; Blue Sun

Media, Inc.; and, BlueFlash Communications Inc. The Defendant agrees that it shall assist the United States in all proceedings, whether administrative or judicial, involving forfeiture, and understands that such assistance may include, but is not limited to, the transfer of forfeitable property to this Office or an assigned case agent, as directed, and the execution of all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds and any and all other documents necessary to deliver good and marketable title to said property.

7. Defendant agrees that it shall implement a compliance program throughout its operations designed to prevent and detect the conduct set forth in Paragraph 15 below. Defendant agrees that for a period of two years from the date of sentencing, every six months, it shall provide a written report to the Chief, Economic Crimes Section, U.S. Attorney's Office for the Southern District of Florida, and copied to the Probation Office, setting forth the status of compliance enhancements, procedures, and activities, related to the detection and prevention of any violation of the federal or State securities laws by the Defendant or any of its employees, agents and affiliates. Defendant further agrees as a condition of Probation to implement any remedial compliance measure recommended by the Probation Office during the period of Probation, however, Defendant may request a hearing with the Court if it disagrees with a specific compliance measure and wishes to request that the Court modify such measure. The parties agree that the Court shall retain jurisdiction to enforce this provision of the Agreement during the period of Probation.

8. Defendant agrees that, if requested by this Office, it will cooperate with the SEC or any other regulatory agency or law enforcement agency, including, but not limited to, meeting in person, truthfully answering questions, and producing documents. The provisions set forth in this

4

paragraph shell not be deemed by either party as binding on any Court or regulatory agency as to any sentence, sanction or proposed remedial action.

9. The Defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this Agreement, a special assessment in the amount of $100 will be imposed on the Defendant. The Defendant agrees that any special assessment imposed shall be paid at the time of sentencing unless it is deemed financially unable to do so by the Court.

10. The Office reserves the right to inform the Court and the Probation Office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the Defendant and the Defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this Agreement, the Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

11. The Office and the Defendant agree that, although not binding on the Probation Office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed on the count to which the Defendant shall plead:

    a. <u>Applicable Guideline Offense and Base Offense Level</u>:

    Pursuant to Section 2B1.1 of the Sentencing Guidelines, the offense guideline applicable to Count One, the base offense level is 6.

    b. <u>Specific Offense Characteristic</u>:

    The parties agree and stipulate that the following offense characteristic applies: The offense loss as to Defendant was more than $95,000 but not more than $150,000. resulting in an increase of 8 levels under Section

5

        2B1.1(b)(1)(E). The offense involved a violation of securities law and, at the time of the offense, the defendant was a registered broker or dealer, resulting in an increase of 4 levels under Section 2B1.1(b)(19)(A).

  c.    Organization Fine Provisions:

        The parties agree and stipulate that the following organization fine provisions should apply: The Base Offense Level is 18, and the base fine is $600,000 pursuant to Section 8C2.4(d). Pursuant to the factors set forth in Section 8C2.5, the parties agree to recommend a culpability score of 3, with a resulting multiplier of 0.60 to 1.20.

Subject to the provisions of this Paragraph as set forth below, the parties agree that they will recommend that the Court calculate the fine using the low-end multiplier, and jointly recommend a fine of $360,000. The parties further agree that they will jointly recommend that the Court impose a two-year period of Probation. The Office and the Defendant acknowledge that at the time of the execution of this Agreement, the Office and David C. Delaney have entered into a Non-Prosecution Agreement ("NPA") involving substantially similar conduct as that set forth in Paragraph 15 below. Pursuant to the NPA, David C. Delaney has agreed to pay a fine of $50,000. If this amount has been paid as of the date of sentencing, the parties agree to recommend that the $50,000 be offset to the fine to be imposed on Defendant, pursuant to Section 8C3.4. The United States, however, will not be required to make these recommendations if the Defendant fails to fulfill any of its obligations under the Plea Agreement or otherwise: (a) fails or refuses to make a full, accurate and complete disclosure to the Probation Office of the circumstances surrounding the relevant offense conduct; (b) is found to have misrepresented facts to the government prior to entering into this Agreement; (c) fails to timely provide financial information to the Government

6

or make restitution or forfeiture payments prior to sentencing to the extent it is financially able, as determined by the Court; or (d) commits any misconduct after entering into this Agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

12. The Defendant is aware that the sentence has not yet been determined by the Court. The Defendant also is aware that any estimate of the probable sentencing range or sentence that the Defendant may receive, whether that estimate comes from the Defendant's attorney, the government, or the Probation Office, is a prediction, not a promise, and is not binding on the government, the Probation Office or the Court. The Defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this Agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The Defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the Defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the Defendant, the government, or a recommendation made jointly by both the Defendant and the government.

13. The Defendant is aware that Title 18, United States Code, Section 3742 affords the Defendant the right to appeal the sentence imposed in this case. Acknowledging this, and in exchange for the undertakings made by this Office in this Plea Agreement, the Defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742 to appeal the conviction, any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the Court establishes at sentencing. The Defendant further understands that nothing in this Agreement shall affect this Office's right

7

and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if this Office appeals the Defendant's sentence pursuant to Section 3742(b), the Defendant shall be released from the above waiver of appellate rights. By signing this Agreement, the Defendant acknowledges that it has discussed the appeal waiver set forth in this Agreement with his attorney. The Defendant further agrees, together with this Office, to request that the district court enter a specific finding that the Defendant's waiver of his right to appeal the conviction or sentence to be imposed in this case was knowing and voluntary.

14. In the event the Defendant withdraws from this Agreement prior to pleading guilty or breaches the Agreement before or after it pleads guilty to the charges identified in paragraph two (2) above or otherwise fails to fully comply with any of the terms of this Plea Agreement, this Office will be released from its obligations under this Agreement, and the Defendant agrees and understands that: (a) the Defendant thereby waives any protection afforded by any proffer letter agreements between the parties, Section 1B1.8 of the Sentencing Guidelines, Rule 11(f) of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence, and that any statements made by the Defendant as part of plea discussions, any debriefings or interviews, or in this Agreement, whether made prior to or after the execution of this Agreement, will be admissible against the Defendant without any limitation in any civil or criminal proceeding brought by the government; and (b) the Defendant stipulates to the admissibility and authenticity, in any case brought by the United States in any way related to the facts referred to in this Agreement, of any documents provided by the Defendant or the Defendant's representatives to any state or federal agency and/or this Office.

15. The Defendant hereby (i) confirms that it has reviewed the following facts with legal counsel, (ii) adopts the following factual summary as his own statement, (iii) agrees that the

8

following facts are true and correct, and (iv) stipulates that the following facts provide a sufficient factual basis for the plea of guilty in this case, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure:

Beginning in or around October 2009, through in or around October 2011, Delaney Equity Group LLC, and certain of its employees, including Individual A and Ian C. Kass, participated with Steven Sanders ("Sanders"), Daniel McKelvey ("McKelvey"), Alvin S. Mirman ("Mirman"), and others, in a scheme to obtain authorization for public trading, and to trade, shares of public companies, referred to as issuers, that had been falsely classified as "free trading" or unrestricted. In reality, the companies and the shares that were the subject of the scheme, were owned and controlled by Sanders, McKelvey and Mirman (the "principals"). The principals were not listed on corporate paperwork or public documents filed with the U.S. Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA"), as control persons or affiliates. But, during the scheme, Defendant, through its employees and agents, came to know that Sanders, McKelvey and Mirman controlled these companies and the free-trading shares of the companies and were affiliates and promoters of the companies. Defendant, through its employees and agents, further came to know that the shares controlled by Sanders, McKelvey and Mirman that were classified as unrestricted, should have been deemed restricted. Defendant participated in the sale of shares of certain of these companies to the investing public.

Defendant assisted with obtaining approval for the shares of certain of these companies to be authorized for public trading over-the-counter, by FINRA. Specifically, Defendant submitted applications on Form 211 in which Defendant gave the false impression that the named officers of the companies requested approval for the public quotation and trading of the shares. The documents and letters submitted by Defendant to FINRA would provide the false and misleading impression that the affiliates of the companies were accurately disclosed on its securities filings and would falsely represent that there were no other affiliations among the shareholders and between the shareholders and the issuer. These forms and documents also represented that the issuer had had no plans or discussions involving a potential merger or acquisition. In reality, the shareholders were nominees, the principals controlled the shares, and the entities were created and being utilized for the purpose of sale in a reverse merger or other business combination. In one example, on or about October 27, 2010, Defendant transmitted to FINRA a letter stating that the affiliations and relationships of the shareholders of BCS Solutions were accurately disclosed and that the entity had had no discussions or negotiations for a potential sale.

Defendant took direction from the principals and had no substantive communication with any of the named officers or shareholders of the companies. Defendant, through its employees and agents, came to learn that the companies

were part of a shell factory being operated by the principals. Defendant sponsored the shares of these companies for public over-the-counter trading so that the principals could profit by selling the shares of the companies, with the expectation that Defendant and its employees and agents would receive fees and commissions as a market maker and broker for the companies and their shareholders.

Documents, faxes, and emails that furthered the scheme, were transmitted by Defendant and its employees and agents, in interstate commerce. In one example, on or about August 24, 2010, Defendant transmitted via facsimile from West Palm Beach, Florida to FINRA in Rockville, Maryland, correspondence and a Form 211 related to Teaching Time, Inc., that provided false information about the nature of the control of the company and the shares of the company.

During the scheme, Defendant through its employees and agents, submitted Form 211 to FINRA, as well as documents and other follow-up correspondence, for mBeach Software Inc.; MIB Digital, Inc.; Teaching Time, Inc.; BCS Solutions, Inc.; Hidden Ladder, Inc.; Benefit Solutions Outsourcing Corp.; mLight Tech, Inc.; Big Clix Corp.; Blue Sun Media, Inc.; and, BlueFlash Communications Inc. These documents contained false and misleading statements concerning the nature of the companies and their shareholders, gave the false impression that the actions of Defendant were requested and authorized by the named officer or management of the entities. In reality, Defendant undertook these actions at the direction of the principals.

Defendant also assisted the principals with deposits of shares of the companies into brokerage accounts maintained by Defendant. and with sales of shares of certain companies, knowing that the principals were in fact affiliates of the companies and that the shares had been falsely classified as unrestricted or free-trading. For example, on or about June 24, 2013, Sanders, through his entity MBN Consulting, sold 10,000 shares of BLES from a brokerage account maintained by Defendant. Defendant had previously sponsored the Form 211 for BLES at the request of Sanders, and has responded to inquiries by FINRA related to BLES, in which Defendant gave the false and misleading impression that they were acting at the direction of the company's named officer. In reality, Defendant came to learn that BLES was a shell company that was being sold by the principals, and the shares of BLES that were sold on June 24, 2013, should have been classified as restricted.

16.     The Defendant agrees that it will not seek any downward offense characteristic, variance or departure with respect to calculation of the advisory guideline sentencing range that is not referenced in this Agreement. This Office agrees that it will not seek any additional upward specific offense characteristic, enhancement, or upward departure to or from the Defendant's offense level beyond those, if any, specifically referred to in this Agreement, except that this Office

shall have the right in its discretion to seek additional upward specific offense characteristics, enhancements, or upward departures to or from the Defendant's offense level beyond those, if any, specifically referred to in this Agreement where any such additional upward specific offense characteristics, enhancements, or upward departures to or from the Defendant's offense level would be based on conduct occurring after the Defendant enters into this Agreement.

17. This Plea Agreement between the parties is the entire agreement and understanding between the United States of America and the Defendant. There are no other agreements, promises, representations, or understandings other than those specifically referred to in this Agreement. The Defendant and counsel represent that they have fully discussed this matter and the Defendant is satisfied the representation of his counsel.

RANDY A. HUMMEL
ATTORNEY FOR THE UNITED STATES,
ACTING UNDER AUTHORITY
CONFERRED BY 28 U.S.C. § 515
SOUTHERN DISTRICT OF FLORIDA

Date: 3/12/18

By: _____
JERROB DUFFY
ASSISTANT U.S. ATTORNEY

11

FOR THE DEFENDANT:

Date: 3-9-18

By: _____
RYAN D. O'QUINN, ESQ.
ATTORNEY FOR DEFENDANT

Date: 3-8-18

By: _____
DELANEY EQUITY GROUP LLC
BY: DAVID C. DELANEY,
MANAGING MEMBER. PRESIDENT AND
CHIEF EXECUTIVE OFFICER
DEFENDANT